CHATEAU ESTATES v. MACOMB TOWNSHIP
ELECTION COMMISSIONERS

1. ZONING — ORDINANCE PASSAGE — ELECTIONS — REFERENDUM — REFERENDARY PETITION—NUMBER OF SIGNATURES.

A township zoning ordinance must be submitted to a referendum election if 15% of the resident taxpaying property owners sign a petition for a referendum within 30 days after passage or rejection of a zoning ordinance, but when a fraction results from the percentum multiplication of the assessed taxpayers, the next full digit is the minimum required number of signatures (MCLA § 125.282).

2. ZONING — ORDINANCE PASSAGE — ELECTIONS — REFERENDUM — REFERENDARY PETITION—NUMBER OF SIGNATURES.

Referendary petition signed by 378 of 2,521 resident property assessed taxpayers did not contain a sufficient number of signatures to require a township zoning ordinance to be submitted to a referendum election because the petition to be valid required 378.15, or because of the fraction 379 signatures, in order to comply with the requirements of the township rural zoning act (MCLA § 125.282).

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 May 14, 1970, at Lansing. (Docket No. 8,592.) Decided July 27, 1970.

Complaint by Chateau Estates and Joseph P. Ciaramitaro against the Macomb Township Clerk and the Macomb Township Board of Election Commissioners to enjoin permanently a referendum elec-

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] Validity and construction of provisions of zoning statute or ordinance respecting protest or petition by property owners. 4 ALR2d 335.

tion on a rezoning ordinance. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Sanborn & Leidel,* for plaintiffs.

*Ray W. McPeters,* for defendant.

Before: LESINSKI, C. J., and DANHOF and SNOW,[*] JJ.

DANHOF, J. There is no dispute between the plaintiffs and defendants regarding the facts of this case or the legal issues presented.

Plaintiffs sought to have certain land in Macomb township rezoned from AG (Agricultural) to R–3 (Mobile Home). On June 6, 1969 the Macomb township board unanimously adopted Ordinance No. 10–6 which rezoned the land as requested.

On July 3, 1969 petitions for a referendum were filed with defendant Sudau the township clerk pursuant to MCLA § 125.282 (Stat Ann 1969 Rev § 5.2963(12)). That statute reads:

"Within 30 days following the passage by the township board or its rejection of such zoning ordinance, a petition signed by 15% of the persons residing in and owning property assessed for taxes located in the unincorporated portion of the township may be filed with the township clerk praying therein for the submission of such ordinance to the electors residing in the unincorporated portion of the township for their approval or rejection. Upon the filing of such petition, any ordinance passed by the township board shall not be invalidated until the same shall have been rejected by a majority of the persons residing in and owning property assessed for taxes located in the unincorporated portion of the township voting thereon at the next

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

regular election which supplies reasonable time for proper notices and printing of ballots, or at any special election called for that purpose. The township board shall provide the manner of submitting any ordinance to the voters for their approval or rejection, and determining the result thereof."

In *Renne* v. *Oxford Township* (1966), 5 Mich App 415, *affirmed* (1968), 380 Mich 39, the statute was held to be constitutional, except for that part which appears to restrict the vote to "persons owning property assessed for taxes."

Shortly after the petitions containing 379 names were filed, one of the general partners in Chateau Estates contacted the township supervisor to ask him the number of people that owned property and resided in the township so that a determination could be made as to whether the 379 names were enough under the statute. It was the township supervisor's opinion that there were 2,521 persons residing in and owning property assessed for taxes in Macomb township; 15% of that figure is 378.15.

On August 26, 1969 plaintiffs' counsel mailed to the township board five affidavits from persons whose names were on the petitions but who stated that they had not signed them. On September 10, 1969 the township clerk, upon the advice of the township attorney, stated that he was not required to check the validity of the signatures because of the oath of the circulators.

On September 15, 1969 plaintiffs commenced the present action and requested in their complaint that an order to show cause be issued requiring that the defendants appear before the circuit court and show cause why a preliminary injunction should not be granted during the pendency of the suit restraining them from holding the election on the referendum question, and also that upon the hearing of this

cause a permanent injunctive order be issued against the defendants restraining them from holding the election. The circuit judge to whom the case was assigned issued the order to show cause and a hearing was held on September 25, 1969. The trial judge refused to issue the preliminary injunction and the order denying it was entered on October 2, 1969.

On October 8, 1969 an application for leave to appeal was filed with the Court of Appeals and a hearing was noticed thereon for October 28, 1969. Meanwhile the trial court held a pretrial conference and a nonjury trial was set for October 27, 1969.

At the trial Joseph Fritz testified that he had not signed the referendum petition although his signature appears on it and that he had not authorized anyone including his wife to sign the petition nor had he given his wife or anyone else a power of attorney. His wife, Marion Fritz, testified that the circulator had come to the door and she had signed both her name and her husband's and that she had not discussed the signing of the petition before with her husband.

Andrew Charles Heisner, Jr., testified that he had not signed the referendum petition on which his name appears nor had he authorized his wife to sign it although she had. He further testified that his wife did not have a power of attorney from him. Upon cross-examination Heisner stated that he was not in favor of a trailer park in his neighborhood, that he was glad his wife had signed his name to the petition, and that had he been home he would have signed it himself.

Gerald Middaugh testified that he had not signed the referendum petition on which his name appears although he said that he had told his wife before she signed his name that she was authorized to do so. He had not given her a power of attorney.

Walter William Austin testified that he had signed both his name and his wife's name to the referendum petition upon which their names appear and he said that his wife had authorized him to sign her name and that he signed in the presence of the circulator.

The Court of Appeals on November 3, 1969 denied the plaintiffs' motion to stay the election which had been previously filed and further denied on December 4, 1969 the plaintiffs' application for leave to appeal. The election was held on November 4, 1969 at which time the ordinance was invalidated. The trial court rendered its opinion on November 12, 1969 at which time it dismissed the complaint with prejudice.

Plaintiffs have appealed arguing that 379 names are required under the statute and that the referendum petitions do not contain that many valid signatures.

The statute requires 15% of the persons residing in and owning property assessed for taxes. It is agreed by both plaintiffs and defendants that the number of persons residing in and owning property assessed for taxes is 2,521; 15% of 2,521 is 378.15. 378 names is not 15% of 2,521 and it was necessary to have 379 names to comply with the statute. As was said in the headnote in In Re Muldoon (1953), 123 NYS2d 711, 712:

"Under statute providing that petition, to have name placed on primary ballot, must be signed by not less than 5% of enrolled voters, when fraction results from multiplication, the next full digit is the minimum requirement."

The testimony is undisputed that Joseph Fritz did not sign his name or authorize his wife or anyone else to sign it for him. This leaves 378 sig-

natures on the petitions which as stated before is insufficient.

Because of the foregoing determination it is unnecessary to decide whether the signatures of Mr. Heisner, Mr. Middaugh and Mrs. Austin were valid.

There being an insufficient number of valid signatures on the referendum petitions, the election should not have been held. The election is null and void, and the ordinance, having been lawfully enacted, is valid.

Reversed and remanded for entry of a judgment in accordance with this opinion. Costs to plaintiffs.

All concurred.